UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IN RE SUBPOENA TO MICROSOFT CORPORATION | Case No. |
| ROCHE FREEDMAN LLP,<br><br>  Plaintiff,<br><br>v.<br><br>JASON CYRULNIK,<br><br>  Defendant. | **PLAINTIFF AND COUNTERCLAIM-DEFENDANTS' MOTION TO COMPEL**<br><br>NOTED ON MOTION CALENDAR:<br>Jan. 6, 2023<br>*Without oral argument* |
| JASON CYRULNIK,<br><br>  Counterclaim-Plaintiff,<br><br>v.<br><br>ROCHE FREEDMAN LLP, KYLE ROCHE, DEVIN FREEDMAN, AMOS FRIEDLAND, NATHAN HOLCOMB, and EDWARD NORMAND,<br><br>  Counterclaim-Defendants. | |

MOTION TO COMPEL
(Case No. _____ )

ARNOLD & JACOBOWITZ PLLC
2701 FIRST AVENUE, SUITE 200
SEATTLE, WA 98121
(206) 769-3759

## INTRODUCTION

Plaintiff and Counterclaim Defendants served a third-party subpoena on Microsoft Corporation (the "Subpoena") in the underlying action in the Southern District of New York, seeking narrow categories of information to reveal the identity of two Outlook email accountholders. Microsoft objected based on the General Data Protection Regulation, EU Regulation 2016/679 the ("GDPR"), and the Electronic Communications Privacy Act, 18 U.S.C. § 2510 *et seq.* ("ECPA") and refused to comply. Because neither ECPA nor the GPDR are, as a matter of law, sufficient basis for noncompliance on the facts here, Plaintiff and Counterclaim Defendants respectfully request that the Court compel Microsoft to respond.

## BACKGROUND

The underlying action, *Roche Freedman, LLP v. Cyrulnik*, Case No. 1:21-cv-01746 (JGK) (S.D.N.Y.), arises from a decision by the founding partners of the Plaintiff law firm, Roche Freedman LLP[1] ("RF" or the "Firm"), to exclude Defendant Jason Cyrulnik, an obstructive and abusive attorney, from any further involvement with the firm. After a year of Defendant Cyrulnik's abuse, including screaming fits, repeated mistreatment of associates, and a disregard of basic norms of firm governance, the five other founding partners voted unanimously to remove him for cause. When he refused to leave, RF commenced the action, seeking declaratory relief to confirm its authority to remove him. Declaration of Kyle Roche, Exh. C at 1–6, filed herewith ("Roche Dec.") In response, Cyrulnik alleges that Counterclaim-Defendants

---

[1] Roche Freedman is now operating under the name Freedman Normand Friedland LLP. To avoid confusion, the firm will be referred to as "Roche Freedman," and together with the other Counterclaim Defendants, the "RF Parties."

| | |
|---|---|
| MOTION TO COMPEL<br>(Case No. _____ )      1 | ARNOLD & JACOBOWITZ PLLC<br>2701 FIRST AVENUE, SUITE 200<br>SEATTLE, WA 98121<br>(206) 769-3759 |

(the "RF Parties") invented his misconduct as part of a "deplorable scheme" to "steal" assets to which he claimed entitlement. Roche Dec. Exh. D ¶¶ 1, 74–80.

Defendant Cyrulnik now intends to have Christen Ager-Hanssen, a known entrapment artist and conspiracy promoter based in the U.K., sit for a deposition in which he will purportedly testify that he heard one of the law firm's founding partners, Kyle Roche, confess to a scheme to deprive Cyrulnik of assets. The subpoena at issue here is necessary to investigate Ager-Hanssen's allegations.

**I) <u>Mr. Ager-Hanssen Was Hired to Attack Mr. Roche's Reputation</u>**

There is every reason to doubt the veracity of the expected testimony. As the RF Parties explained to Magistrate Judge Netburn, *see* Roche Dec. Exh. E, Ager-Hanssen is notorious for ethical violations in litigation. By his own account, he provides "conflict management" services to "eccentric billionaires," using methods such as "covert recording" and "social engineering" to help his clients gain strategic advantages in litigation. Roche Dec. Exh. E-1 at 3–4. In a 2014 interview, Ager-Hansen explained that his strategy involves "infiltrating the other party" with former "CIA, MI6, and Mossad" agents. Id. Exh. E-2 at 10. For example, Ager-Hansen went on to admit, he "ran a double game – or social engineering" where his "mission was **to pretend** that [he] was going to bring about a settlement." *Id.* Exh. E-2 at 12 (emphasis added).) In pursuit of that fraudulent objective, he met with the opposing party "many times" and secretly recorded "everything he said." *Id.* The opposing party in that case was quoted as saying that Ager-Hanssen "has no business methods" but "deals in manipulation." *Id.* Exh. E-2 at 13.

Ager-Hanssen first appeared at the margins of this case when he was apparently hired to use his underhanded tactics against Roche in an unrelated matter earlier this year. In early January 2022, Ager-Hanssen arranged for Roche to attend meetings in London. Ager-Hanssen

MOTION TO COMPEL
(Case No. _____ )

ARNOLD & JACOBOWITZ PLLC
2701 FIRST AVENUE, SUITE 200
SEATTLE, WA 98121
(206) 799-4221

and one Mauricio Andres Villavicencio de Aguilar—a man posing as his business associate—participated in the meetings ostensibly to discuss Ager-Hanssen's contemplated investment in a litigation finance startup. Roche Dec. Exh. E at 2. Only later was it discovered that these meetings had been arranged on false pretenses and were secretly recorded. *Id.* at 2–3.

In late August 2022, an anonymous tabloid website called "CryptoLeaks" published a series of selectively edited and decontextualized video clips from these meetings, designed to cast Roche in the worst possible light. Roche Dec. Exh. E at 3. The video clips depicted Roche apparently making inappropriate remarks about RF's class action practice, but did not show him making any statements relating to this litigation. *Id.* It appears that Ager-Hanssen's meeting with Roche and the subsequent leaks were orchestrated by Dfinity, a defendant in a high-profile class action RF is prosecuting in the Northern District of California. *Id.*

Since the release of the CryptoLeaks videos, Ager-Hanssen has intensified his media campaign against Roche, posting dozens of tweets about him, and stating he "want[s] to see Kyle Roche disbarred." As he puts it, he has an "obsession" with Roche. Roche Dec. Exh. E-3 at 2–3. Ager-Hanssen also sat for inflammatory interviews with Coingeek, a website owned by Calvin Ayre, the billionaire financier of one Craig Wright, against whom RF recently obtained a $143 million judgment. *Id.* Exh. E-3 at 5. Since then, Ager-Hanssen has become CEO of nChain, the group of companies which Wright serves as chief scientist and which Ayre has funded.

Ager-Hanssen now apparently seeks to extend his business-motivated campaign against Roche into this litigation. Cyrulnik testified at his deposition that, having no prior acquaintance with Ager-Hanssen, Ager-Hanssen unexpectedly reached out to him in August or September 2022 and volunteered to appear without a subpoena to testify against Roche. Roche Dec. Exh. F at 406:16 – 413:7.) Ager-Hanssen's anticipated account rests not on any contemporaneous

3

MOTION TO COMPEL
(Case No. _____ )

ARNOLD & JACOBOWITZ PLLC
2701 FIRST AVENUE, SUITE 200
SEATTLE, WA 98121
(206) 799-4221

knowledge, but entirely on statements Roche purportedly made more than a year after this litigation began. Although Hanssen was surreptitiously recording Roche in London, *somehow* none of the statements he now attributes to Roche were recorded. *Id.*

**II)** **Christian Ager-Hanssen Blames Mauricio Andres Villavicencio de Aguilar for the Secret Recordings**

Despite all the evidence that Ager-Hanssen was responsible for recording Roche, he has publicly claimed that the meetings and the recordings were arranged by a consultant he had never met "who identified himself as Mauricio Andres Villavicencio de Aguilar." Justin Wise, *Crypto, Cash and Spies: Secret Videos Sink Legal Rising Star*, Bloomberg Law (Oct. 31, 2022) ("[Ager-Hanssen] said he did not record the meeting, or know who did, but that the video excerpts later released were from the consultant's vantage at the table."), https://news.bloomberglaw.com/class-action/crypto-cash-and-spies-secret-videos-sink-legal-rising-star.

Conveniently, but unsurprisingly, Mr. Villavicencio de Aguilar is a ghost. This name appears to be a fraudulent alias of the individual who participated in Ager-Hanssen's scheme to record Roche without his consent. Accordingly, assuming Ager-Hanssen sticks to his story, the only way for the Firm to identify "Villavicencio de Aguilar" and specifically discredit Ager-Hanssen's testimony about Roche is by data from the email provider through whom "de Aguilar" communicated with Roche.

**III)** **The Subpoena Seeks Basic Information to Uncover the True Identity of "Villavicencio" and the Nature of His Relationship to Ager-Hanssen.**

The Subpoena seeks information related to the two Microsoft Outlook email accounts that were used to arrange the meetings between Roche and Ager-Hanssen. Roche Dec. Exh. G. One is the email account belonging to the individual calling himself Villavicencio de Aguilar, and the

4

MOTION TO COMPEL
(Case No. _____ )

ARNOLD & JACOBOWITZ PLLC
2701 FIRST AVENUE, SUITE 200
SEATTLE, WA 98121
(206) 799-4221

other purportedly belonged to his assistant, "Anna Chamberlain." In connection with these two accounts, the RF Parties seek just the following limited information:

- All documents concerning the identity of the persons associated with the email addresses, including that person's name, mailing address, IP address, and billing information; any payment information provided in connection with either email address; any other email addresses associated with each email address; and the date on which the email addresses were created.

- Documents sufficient to show each email address that sent emails to, or received emails from, including the time and date on which such emails were sent or received.

*Id.* Exh. G. This information is necessary for the RF Parties to find Ager-Hanssen's collaborator and effectively prepare for Ager-Hanssen's deposition.

Microsoft has objected to the Subpoena on three grounds: location of production; that "it seeks information subject to EU Regulation 2016/679, the General Data Protection Regulation ("GDPR")"; and under the Electronic Communications Privacy Act, 18 U.S.C. § 2510 *et seq.*; and Microsoft has informed Plaintiff that therefore it will only provide responsive information "with the written consent of the account holder(s)." Roche Dec. Exh. B at 5.

## ARGUMENT

### I) JURISDICTIONAL STATEMENT AND LOCATION OBJECTION

"A motion for an order to a nonparty," such as Microsoft, "must be made in the court where the discovery is or will be taken." Fed. R. Civ. P. 37(a)(2). The serving party may move to compel production under a subpoena in "the court for the district where compliance is required." Fed. R. Civ. P. 45(d)(2)(B)(i). Although Microsoft's objection to compliance in Los Angeles, CA is not well taken, RF is content to have the documents delivered to undersigned counsel in King County, Washington, where Microsoft admits that it resides and regularly

5

MOTION TO COMPEL
(Case No. _____ )

ARNOLD & JACOBOWITZ PLLC
2701 FIRST AVENUE, SUITE 200
SEATTLE, WA 98121
(206) 799-4221

transacts business. Roche Dec. Exh. B at 2:9–10. Therefore, compliance may be required here under Fed. R. Civ. P. 45(c)(2)(A), so this motion is properly before this Court.

**II) <u>THE GPDR DOES NOT EXEMPT MICROSOFT FROM DISCOVERY.</u>**

Microsoft's objection that the information sought by the Subpoena is subject to the GDPR is not a sufficient basis for non-compliance. "The party relying on foreign law has the burden of showing that such law bars production." *Vetco*, 691 F.2d at 1289; *see also, e.g.*, *Giorgi Glob. Holdings, Inc. v. Smulski*, No. CV 17-4416, 2020 WL 2571177, at *2 (E.D. Pa. May 21, 2020). "In determining whether the foreign statute excuses noncompliance with [a subpoena], courts consider: (1) the importance of the documents or other information requested to the litigation; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and (5) the extent to which noncompliance would undermine important interests of the United States." *Finjan, Inc. v. Zscaler, Inc.*, No. 17-CV-06946JSTKAW, 2019 WL 618554, at *1 (N.D. Cal. Feb. 14, 2019) (citing *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1475 (9th Cir. 1992).

The *Richmark* factors all weigh in favor of compelling compliance here.

**A) The Documents Sought by the RF Parties are Important to the Litigation.**

The documents and information sought by the RF Parties are important to the litigation. The information sought by the Subpoena may be the RF Parties' only way to expose the anticipated perjurious testimony of Ager-Hanssen. *See Finjan, Inc.*, 2019 WL 618554, at *2 (quoting *Richmark*, 959 F.2d at 1468) ("Where the evidence is directly relevant, [the Ninth Circuit has] found this factor to weigh in favor of disclosure.").

6

MOTION TO COMPEL
(Case No. _____ )

ARNOLD & JACOBOWITZ PLLC
2701 FIRST AVENUE, SUITE 200
SEATTLE, WA 98121
(206) 799-4221

Ager-Hanssen's credibility will be significantly undermined to the extent the RF Parties can demonstrate a pre-existing relationship between him and "Villavicencio de Aguilar." And "de Aguilar" will also be able to testify to what truly happened at the meetings with Roche. At present, the *only* identifying information the RF Parties have relating to "Villavicencio de Aguilar" are the Microsoft Outlook accounts that he used to contact Roche. The information sought by the Subpoena is therefore highly relevant and not cumulative.

**B) The Requests in the Subpoena are Highly Specific.**

The RF Parties' subpoena is highly specific, seeking only information about the true identity of the account owners and their correspondents. Roche Dec. Exh. G at 5. Tellingly, Microsoft is not refusing to produce the information on the grounds that it would be unduly burdensome. *See, e.g.*, *AstraZeneca LP v. Breath Ltd.*, No. CIV. 08-1512 (RMB/AM, 2011 WL 1421800, at *13 (D.N.J. Mar. 31, 2011) ("Moreover, AstraZeneca has not objected to the production of these documents on the basis that such production would be burdensome. The Court finds that this factor weighs in favor of production of the documents at issue."). Accordingly, this factor tips heavily in favor of compliance with the Subpoena.

**C) The Information Sought Originated with Microsoft, which is Located in the United States.**

While Microsoft suggests that the owners of these email accounts are located in Europe, Microsoft is the responding party and is located in the United States, as are all the parties to the litigation. The fact that Microsoft is a U.S. based company outweighs the possibility that "Villavicencio de Aguilar" (whoever he or she is) resides in Europe. *See Finjan, Inc.*, 2019 WL 618554, at *2 ("although Mr. Warner is located in the U.K., Defendant itself is an American company, subject to American discovery law.")

7

MOTION TO COMPEL
(Case No. _____ )

ARNOLD & JACOBOWITZ PLLC
2701 FIRST AVENUE, SUITE 200
SEATTLE, WA 98121
(206) 799-4221

. Given that all other factors tilt in favor of compliance with the Subpoena, Microsoft cannot stand on this factor alone to justify non-production.

**D) There Are No Readily Available Alternative Means of Securing the Information.**

There are no available alternative means for the RF Parties to secure information related to the true identify of "Villavicencio de Aguilar." As stated above, the *only* information the RF Parties possess about "Villavicencio de Aguilar" is his Microsoft Outlook email addresses. Without exploring this information, the RF Parties have no way to discern his relationship with Ager-Hanssen—an individual who appears eager to provide perjurious testimony against the RF Parties. Permitting "Villavicencio de Aguilar" to prevent discovery into his true identity would only serve to protect fraudulent activity.

And even if there were some other lead to his identity, the difficulty and delay of international discovery would not be "substantially equivalent" to the requested discovery, and therefore this factor would still weigh in favor of discovery. *See Aerospatiale*, 482 U.S. at 542 ("In many situations the Letter of Request procedure authorized by the Convention would be unduly time consuming and expensive, as well as less certain to produce needed evidence than direct use of the Federal Rules."); *Richmark Corp.*, 959 F.2d at 1475 ("[T]he alternative means must be 'substantially equivalent' to the requested discovery.").

**E) Noncompliance Would Undermine the Interests of the United States**

The extent to which noncompliance would undermine the interests of the United States is typically considered the "most important factor." *Richmark Corp.*, 959 F.2d at 1476. The "United States obviously has a substantial interest in 'vindicating the rights of American plaintiffs.'" *In re Air Crash at Taipei, Taiwan on Oct. 31, 2000*, 211 F.R.D. 374, 379 (C.D. Cal. 2002) (quoting *Richmark Corp.,* 959 F.2d at 1477). Moreover, while Europe "has an interest in protecting the

8

MOTION TO COMPEL
(Case No. _____ )

ARNOLD & JACOBOWITZ PLLC
2701 FIRST AVENUE, SUITE 200
SEATTLE, WA 98121
(206) 799-4221

privacy of its citizens, courts have also recognized that an interest in protecting privacy 'is diminished where the court has entered a protective order preventing disclosure of the secret information.'" *Finjan, Inc.*, 2019 WL 618554 (quoting *Masimo Corp. v. Mindray DS USA, Inc.*, Case No.: SACV 12-02206-CJC(JPRx), 2014 WL 12589321, at *3 (C.D. Cal. May 28, 2014)).

There is an existing protective order in this litigation, Roche Dec. Exh. H, that is more than sufficient to safeguard the privacy interests protected by the GDPR. *See, e.g.*, *AnywhereCommerce, Inc. v. Ingenico, Inc.*, No. 19-CV-11457-IT, 2021 WL 2256273, at *3 (D. Mass. June 3, 2021) ("Thus, far from ignoring the protections of the GDPR, the court's [protective] Order ensures that the protections provided by the GDPR are maintained throughout and following this proceeding."); *In re Air Crash at Taipei*, *Taiwan on Oct. 31, 2000*, 211 F.R.D. at 379 (protective order lessened concerns about the foreign government's interest in maintaining secrecy); David M. Howard, *Foreign Data Protection Laws in International Arbitration and United States Litigation*, 55 TEX. INT'L L.J. 395, 401–02 (2020) ("Therefore, when a domestic court enters a protective order, this factor would likely weigh in favor of disclosure.").

Accordingly, given the substantial interest the U.S. has in permitting the RF parties to vindicate their right to discovery of information to counter perjurious testimony, and the non-existent burden upon the person behind the alias of "Villavicencio de Aguilar," this factor weighs heavily in favor of compelling production.

**III)    ECPA DOES NOT EXCUSE MICROSOFT FROM COMPLIANCE.**

ECPA lays out a complex statutory scheme, with different tiers of protected information. While **"**a person or entity providing an electronic communication service" or "providing remote computing service" to the public "shall not knowingly divulge to **any** person or entity the **contents** of a communication while in electronic storage by that service," such a person, subject

9

MOTION TO COMPEL　　　　　　　　　　　　　　　　　ARNOLD & JACOBOWITZ PLLC
(Case No. _____ )　　　　　　　　　　　　　　　　　2701 FIRST AVENUE, SUITE 200
　　　　　　　　　　　　　　　　　　　　　　　　　　　SEATTLE, WA 98121
　　　　　　　　　　　　　　　　　　　　　　　　　　　(206) 799-4221

to specifically enumerated exceptions, "shall not knowingly divulge a record or other information pertaining to a subscriber to or customer of such service (**not including the contents** of communications covered by paragraph (1) or (2)) to any governmental entity." 18 U.S.C.A. § 2702(a)(2)–(3) (emphasis added).  In other words, unlike the content of subscriber communications, subscription records are shielded only from the government, not from a private party's civil subpoena.  To make that even more clear, the statute expressly provides: (c) Exceptions for disclosure of customer records.--A provider described in subsection (a) **may** divulge a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications covered by subsection (a)(1) or (a)(2))…(6) to any person other than a governmental entity" 18 U.S.C.A. § 2702(c) (emphasis added).

Federal and state courts have therefore recognized that subscriber-identity information can be reached by civil subpoena. *E.g.*, *Malibu Media, LLC v. Doe*, No. CIV.A. ELH-15-01048, 2015 WL 4040409, at *2–3 (D. Md. June 30, 2015) (denying motion to quash where "Malibu sought to serve defendant's ISP with a subpoena requesting defendant's 'name, address, telephone number, and e-mail address.'"); *and see Negro v. Superior Court,* 230 Cal.App.4th 879, 902, 179 Cal.Rptr.3d 215 (denying motion to quash subpoena because "Congress's use of the word 'may' to frame an exception to the Act's general prohibition on disclosure is not such a 'clear expression of ... intent' as will justify a reading of the Act that categorically immunizes service providers against compulsory civil process.")

## **CONCLUSION**

Because the GDPR and ECPA do not excuse Microsoft from compliance, Plaintiff and Counterclaim Defendants respectfully request that the Court grant the Motion to Compel, and order Microsoft to promptly respond to the Subpoena.

10

MOTION TO COMPEL  
(Case No. _____ )

ARNOLD & JACOBOWITZ PLLC  
2701 FIRST AVENUE, SUITE 200  
SEATTLE, WA 98121  
(206) 799-4221

Respectfully submitted,

Dated: December 21, 2022

**ARNOLD JACOBOWITZ PLLC**

/s/ Emanuel Jacobowitz
Emanuel Jacobowitz, WSBA No. 39991
8201 164th Ave NE, Suite 200
Redmond, WA 98052
206-769-3759
Manny@CAJlawyers.com
*Counsel for Plaintiff
and Counterclaim Defendants*

11

MOTION TO COMPEL
(Case No. _____ )

ARNOLD & JACOBOWITZ PLLC
2701 FIRST AVENUE, SUITE 200
SEATTLE, WA 98121
(206) 799-4221